

**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Sandra J. Vito, | * | Case No. 18-12138-MMH |
| | * | |
| Debtor. | * | Chapter 7 |
| *   *   *   *   *   *   * | * | *   *   *   *   *   * |
| K&M Electrical Services, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adversary No. 18-00173-MMH |
| | * | |
| Sandra J. Vito, | * | |
| | * | |
| Defendant. | * | |
| *   *   *   *   *   *   * | * | *   *   *   *   *   * |

### <u>MEMORANDUM OPINION</u>

Business is often done based on the trust established between the contracting parties. The

parties have worked together in the past and, satisfied with that relationship, agree to continue to

work on projects in the future. When that trust is breached, the relationship and often at least one

party's economic position suffer. That is the matter before the Court, and the Court must decide

whether the breach that occurred gives rise to more than a mere breach of contract claim. If it does,

the claim might garner protection against discharge in the Defendant's chapter 7 case under

section 523 of the Bankruptcy Code.[1] If it does not, the Defendant's liability on the claim will be discharged under section 727 of the Code.

As further explained below, the Court finds that the Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted under section 523(a)(4) of the Code. The Court notes that the factual allegations contained in the Amended Complaint, while suggesting a breach of personal trust and of contract, do not establish a technical or express trust that results in the kind of fiduciary relationship required by section 523(a)(4). The Court recognizes the statutory trust language relied on by the Plaintiff but determines that the Maryland statute at issue does not give rise to an express or technical trust under section 523(a)(4).

That finding does not end the Court's consideration of the statutory trust language, however, as the statute does lend support to the Plaintiff's claim that the Defendant knowingly and intentionally disregarded the Plaintiff's rights in certain funds received by the Defendant for purposes of section 523(a)(6). The Court is sensitive to the Defendant's argument that casting a knowing decision to not pay a debt as an intentional injury to the creditor under section 523(a)(6) would severely undercut the effect of, and policy underlying, the bankruptcy discharge. Nevertheless, the statutory trust, the Plaintiff's rights thereunder, and the Defendant's conduct, as alleged in the Amended Complaint, amount to more than a mere payment default and adequately state a plausible claim for nondischargeability under section 523(a)(6) of the Code. The Court thus will dismiss Count I of the Amended Complaint under Federal Rule Civil Procedure 12(b)(6) and deny the pending Motion to Dismiss as to Count II.

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

I.     **Relevant Background**[2]

The Defendant filed her chapter 7 case on February 20, 2018. Case No. 18-12138, ECF 1. The Defendant discloses her employment as being the "President of construction company," and then identifies the company as "Vito Construction, Inc." ("Vito Construction"). Case No. 18-12138, ECF 13, Schedule I. The Defendant lists Vito Construction as an unsecured creditor in her case but does not list the Plaintiff as a creditor or note any pending state court litigation between herself (in her individual capacity) and the Plaintiff.[3] Case No. 18-12138, ECF 13, Schedule E/F.

The Plaintiff worked as a subcontractor for Vito Construction on several different construction projects prior to the petition date. According to the pleadings filed in this adversary proceeding, the Plaintiff and its principal developed a good working relationship with Vito Construction and the Defendant. That relationship began to deteriorate, however, at some point in 2016 when Vito Construction's payments to the Plaintiff slowed or ceased entirely, causing the Plaintiff to go unpaid for work it had performed. The Plaintiff further alleges that, on each of the projects, Vito Construction received full payment from the project owners but failed to remit appropriate amounts to the Plaintiff for its subcontracting work. At the time of the Defendant's bankruptcy filing, Vito Construction allegedly owed the Plaintiff approximately $150,575.99. ECF 1.

The Plaintiff commenced this adversary proceeding against the Defendant on May 22, 2018. The Plaintiff's initial Complaint sought a determination that its claims against the Defendant for amounts due under the Plaintiff's contracts with Vito Construction are nondischargeable in the

---

[2] The facts set forth in this Part I are based on the relevant documents and the Court's docket.
[3] On her Statement of Financial Affairs, the Defendant checks "yes" in response to Question 9, "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?" She does not, however, provide any details—as required—regarding such litigation or proceedings. Case No. 18-12138, ECF 14.

3

Defendant's chapter 7 case under sections 523(a)(2), (a)(4), and (a)(6) of the Code. The Plaintiff generally alleges that it did not receive full payment due under the contracts and that the Defendant, as an officer or person in control of Vito Construction, is responsible for the Plaintiff's resulting monetary losses. The Defendant denies the Plaintiff's allegations against her.

The Defendant filed her original motion to dismiss on July 9, 2018. ECF 12. After full briefing by the parties and a hearing before the Court, the Court granted the relief sought by that motion to dismiss with leave for the Plaintiff to amend its complaint. ECF 19. The Plaintiff filed its Amended Complaint on October 24, 2018. ECF 21. The Amended Complaint eliminated the Plaintiff's allegations under section 523(a)(2) of the Code and with respect to construction projects other than the Vital Records Project (as that term is defined in the Amended Complaint). It continues to assert claims against the Plaintiff under section 523(a)(4) of the Code in Count I, and section 523(a)(6) of the Code in Count II.

By the pending Motion to Dismiss, the Defendant asserts that the Amended Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). ECF 22. The Defendant accordingly asks the Court to dismiss the Amended Complaint in its entirety. The Plaintiff disagrees and argues that it has pled more than adequate facts to meet the plausibility standard applicable to motions under Civil Rule 12(b)(6). ECF 23. It further states that relief based on those facts is warranted under applicable law interpreting sections 523(a)(4) and (a)(6) of the Code. The Court addresses below each of the two counts in the Amended Complaint.

## II.    Jurisdiction and Legal Standards

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2).

4

The Motion to Dismiss seeks dismissal of the Amended Complaint under Civil Rule 12(b)(6). Civil Rule 12(b) generally permits the filing of a motion to assert certain defenses, including that the complaint "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Civil Rule 12(b)(6) "tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; 'it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Hall v. Greystar Management Servs., L.P.*, 637 Fed. App'x 93, 99 (4th Cir. 2016) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The Court must "accept the well-pled allegations of the complaint as true, and [] construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss under Civil Rule 12(b)(6), the complaint must plead facts that surpass speculation and "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The relief requested by the Motion to Dismiss is of particular import to the parties because the Amended Complaint involves the proper scope of the Defendant's discharge in her chapter 7 case and whether any part of the Plaintiff's claim against the Defendant will survive the bankruptcy. The bankruptcy discharge is a hallmark of U.S. bankruptcy law. It provides a debtor with that coveted fresh start, and it is one of the primary policy objectives underlying the Code. *See, e.g., Grogan v. Garner*, 498 U.S. 279, 286 (1991). Indeed, the Code broadly defines the terms "debt"[4] and "claim"[5] so that, "[g]enerally, 'all legal obligations of the debtor, no matter how remote

---

[4] The term "debt" means a "liability on a claim." 11 U.S.C. § 101(12).

[5] The term "claim" means a "**(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or

or contingent,' are potentially dischargeable in bankruptcy." *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (citations omitted).

The bankruptcy discharge is not, however, absolute. It is limited by, among others, sections 727(a) and 523(a) of the Code. 11 U.S.C. §§ 727(a), 523(a). It also is reserved for the "'honest but unfortunate'" debtor. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 128 (1979) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Accordingly, in assessing a debtor's right to a discharge, "courts should be 'equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code.'" *Twin City Fire Ins. Co. v. Estrin (In re Estrin)*, No. 15–80039, 2016 WL 691506, at *7 (Bankr. D.S.C. Feb. 19, 2016) (quoting *Taylor v. Davis (In re Davis)*, 494 B.R. 842, 867 (Bankr. D.S.C. 2013) and *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). That said, "[i]n all exceptions to, and denial of, discharge cases, a creditor must prove their allegations by a preponderance of the evidence, . . . and all exceptions to discharge are strictly construed against the creditor." *In re Ogbebor*, No. 08-24898-RAG, 2013 WL 5376531, at *7 (Bankr. D. Md. Sept. 25, 2013).

The Court thus evaluates the Plaintiff's claims under sections 523(a)(4) and (a)(6) of the Code in the context of the Motion to Dismiss against these foundational principles.

## III.    Analysis

Section 523 of the Code identifies certain categories of debt that are not dischargeable in an individual debtor's bankruptcy case. These exceptions to discharge necessarily impede a debtor's fresh start; the excepted debt remains a personal liability of the debtor that must be satisfied outside of the bankruptcy process. Consequently, courts construe exceptions to discharge

---

not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

narrowly. *See, e.g., In re Strack*, 524 F.3d 493, 497 (4th Cir. 2008) ("Congress, however, has provided, in 11 U.S.C. § 523, several limited exceptions to this presumption of dischargeability, which we must construe narrowly 'to protect the [Bankruptcy Act's] purpose of providing debtors a fresh start.'") (citations omitted); *In re Durant*, 586 B.R. 577, 583 (Bankr. D. Md. 2018). A debt must satisfy the statutory criteria set forth in section 523 of the Code or it is subject to a debtor's general discharge, which in a chapter 7 case is set forth in section 727 of the Code.[6] 11 U.S.C. § 727.

The Plaintiff asserts that its claim against the Defendant for amounts due and owing under the Vito Construction contracts is nondischargeable in the Defendant's chapter 7 case under two separate provisions of section 523 of the Code, namely subsections (a)(4) and (a)(6). Section 523(a)(4) addresses claims arising from a debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4). Section 523(a)(6) focuses on claims resulting from willful and malicious injury. 11 U.S.C. § 523(a)(6). In this case, accepting all the Plaintiff's allegations as true and drawing all reasonable inferences in its favor, the Amended Complaint establishes a potential breach of contract claim and statutory liability claim against the Defendant but not the kind of fiduciary relationship and breach contemplated by section 523(a)(4). Nevertheless, the Plaintiff's allegations are adequate to state a plausible claim for nondischargeability under section 523(a)(6). As such, and as further explained herein, the Court

---

[6] Section 727(b) provides,

Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727.

finds merit in the Defendant's arguments and the Motion to Dismiss with respect to Count I of the Amended Complaint but not with respect to Count II.

### A.  Section 523(a)(4)

Section 523(a)(4) of the Code focuses on, among other things, a debtor's conduct while acting in a fiduciary capacity. The statute provides that an individual debtor's discharge does not include "any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Courts evaluating fiduciary-related claims under section 523(a)(4) of the Code require proof of a traditional fiduciary relationship and evidence of fraud or defalcation by the debtor while acting in a fiduciary capacity. Section 523(a)(4) is satisfied with evidence of either fraud or defalcation. For purposes of section 523(a)(4), fraud means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709 (1877); *see also Kovens v. Goodwich (In re Goodwich)*, 517 B.R. 572, 583–84 (Bankr. D. Md. 2014). Similarly, defalcation means "'an intentional wrong'" or "a finding that 'the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.'" *Goodwich*, 517 B.R. at 584 (quoting *Bullock v. BankChampaign*, 596 U.S. 267, 274 (2013)).

The Plaintiff asserts two different legal theories to support its requested relief under section 523(a)(4). First, the Plaintiff posits that the Maryland Construction Trust Statute, MD. CODE ANN, REAL PROP. § 9–201 et seq. ("Trust Statute"), imposes fiduciary duties on the Defendant. Second, the Plaintiff argues that the Plaintiff and the Defendant entered into a voluntary trust agreement under which the Defendant agreed to act as a fiduciary with respect to certain funds. Either theory, if plausible under the facts set forth in the Amended Complaint, would suffice and rebut the relief requested by the Motion to Dismiss.

### 1. Meaning of "Fiduciary" Under Section 523(a)(4)

The Code does not define the term "fiduciary" as used in section 523(a)(4). Rather, this Court must look to applicable federal and state law. Courts generally agree that whether a debtor is acting as a fiduciary for purposes of section 523(a)(4) is determined by federal law. *See In re Heilman*, 241 B.R. 137, 155–56 (Bankr. D. Md. 1999) ("It is well-settled that the determination of fiduciary capacity is a question of Federal law."). *See also, e.g., In re Anderson*, No. 15-18781-WIL, 2018 WL 1475981, at *17 (Bankr. D. Md. Mar. 23, 2018). A court may, however, consider state law in evaluating the grounds allegedly giving rise to the trust or fiduciary relationship. To do otherwise might skew the court's analysis of the timing of, and purpose underlying, the debtor's alleged fiduciary role. Nevertheless, "not all state law fiduciary relationships rise to the level requisite to except the debt from discharge." *Ogbebor*, 2013 WL 5376531, at *6.

Federal law adopts a relatively tight definition of the term fiduciary as it is used in section 523(a)(4). *See, e.g., Heilman*, 241 B.R. at 158–59 ("Even though the Bankruptcy Code does not define 'fiduciary capacity,' the term is to be narrowly construed in the context of dischargeability of debts in bankruptcy."). This approach aligns with the overarching policy of construing exceptions to discharge narrowly. *See, e.g., Heilman*, 241 B.R. at 158–59. Indeed, one criticism of granting too much deference to state law concepts of fiduciaries is that such an approach strays from the foundational principles underlying the bankruptcy discharge and allows state courts and legislatures to affect the related federal policy.[7] *Id*. at 160.

---

[7] In *Heilman*, Judge Schneider quotes, at length, a decision by Judge Yaco on this particular point,

> This approach in my judgment does not give proper attention to the narrowness of the federal definition of fiduciary. [Footnote omitted.] The federal law is aimed only at the express trust situation in which the debtor either expressly signified his intention at the outset of the transaction, or was clearly put on notice by some document in existence at the outset, that he was undertaking the special responsibilities of a trustee to account for his actions over and above the normal obligations that contracting parties have to each other in a commercial transaction. The concept of "incorporation by reference" of various state law duties labeled as fiduciary obligations does not serve to further the purpose encompassed by § 523(a)(4) of the Bankruptcy Code.

The U.S. Supreme Court directly addressed the scope of the term "fiduciary" in the context of the bankruptcy discharge under a prior version of federal bankruptcy legislation, explaining

> The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract.

*Chapman v. Forsyth*, 43 U.S. 202, 208 (1844). Given the similarity in discharge provisions in subsequent bankruptcy legislation, courts have continued to follow this guidance in cases under the Code. Moreover, most courts following Supreme Court precedent hold that the trust and fiduciary obligations must exist prior to the conduct giving rise to the claim. *See, e.g*., *Ogbebor*, 2013 WL 5376531, at *10 ("The wrongful act cannot form the foundation of that relationship.") (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)).[8] This latter distinction accords with the notion that section 523(a)(4) does not apply in the context of resulting or constructive trusts.

### 2.  Statutory Trusts and Section 523(a)(4)

The Plaintiff argues that the Defendant is a statutory fiduciary who owed, and breached, certain duties to the Plaintiff. The Plaintiff cites the Trust Statute to support this position. MD. CODE ANN., REAL PROP. § 9-201, et seq. The Trust Statute provides, in pertinent part,

---

241 B.R. 137, 160 (quoting *BAMCO 18 v. Reeves (In re Reeves)*, 124 B.R. 5, 10 (Bankr. D.N.H. 1990)). *See also Matter of Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) ("If, contrary to our decision in *Judd v. First Federal Savings & Loan Ass'n*, 710 F.2d 1237, 1241 (7th Cir.1983), which holds that the word 'trust' in an instrument does not by itself 'transform a traditional debtor-creditor relationship into a fiduciary relationship,' a fiduciary is anyone whom a state calls a fiduciary—the only principle on which the discharge of Marchiando's debt could be refused— states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary. They are not apt to go that far.").

[8] Specifically, in *Davis*, the Supreme Court stated,

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto. In the words of Blatchford, J.: 'The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.'

293 U.S. at 333.

(b)(1) Any money paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

(2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

MD. CODE ANN., REAL PROP. § 9-201. The Trust Statute further provides that

Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the money held in trust under § 9-201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the money is held in trust, shall be personally liable to any person damaged by the action.

MD. CODE ANN., REAL PROP. § 9-202. The question thus becomes whether this statutory language evidences the core elements of an express or technical trust,[9] which would create the kind of fiduciary relationship required by section 523(a)(4).[10]

Several courts have considered this question, but not all courts agree on the answer. Some of the variation in response appears attributable to differences in statutory language. *See, e.g., In re Manelos*, 337 B.R. 409, 415 (Bankr. D.N.M. 2006) (comparing two different statutes under New Mexico law in the context of section 523(a)(4)). Other variations are not so easily explained. The Court understands why courts might differ in their analysis in that most of these proceedings involve a breach of the movant's trust. The movant in a nondischargeability action invoking section 523(a)(4) often has relied on the debtor and perhaps the terms of the parties' contract or prior dealings; the movant may have even given the debtor the benefit of the doubt in extending

---

[9] For an explanation of the difference between an express trust and a technical trust, see *In re Cobham*, 551 B.R. 181, 193 (E.D.N.C.), *aff'd*, 669 F. App'x 171 (4th Cir. 2016).

[10] Although not determinative, Maryland law describes an express trust as follows: "Express trusts are created by the direct and willful acts of the parties, by some writing, or deed, or words expressly evidencing the intention to create a trust." *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 803 A.2d 548, 567 (Md. 2002). *See also infra* Part III.A.3.

payment terms based on past relations. Yet, once the bankruptcy case is filed, the movant is left only with an unsecured claim that likely will go unpaid. Unfortunately, this is the situation for most unsecured creditors in a chapter 7 bankruptcy case. Only an enumerated few unsecured debts garner different treatment. Because of the resulting inequality in creditor treatment, as well as the impact on the debtor's fresh start, courts scrutinize statutory trusts under section 523(a)(4).

Some Maryland courts and courts considering Maryland law have determined that the Trust Statute fails to establish an express or technical trust for purposes of section 523(a)(4).[11] This position is most thoughtfully articulated by Judge Schneider in *In re Holmes*, 117 B.R. 848 (Bankr. D. Md. 1990). Judge Schneider reviews Supreme Court precedent, the elements of an express or technical trust, and the policy underlying the bankruptcy discharge. *Id.* at 853–855. He examines decisions qualifying statutory trusts as express trusts under section 523(a)(4), and respectfully disagrees with those courts. In so doing, Judge Schneider undertakes an exhaustive review of the elements of an express or technical trust, which generally requires "a formal fiduciary relationship whose creation is based upon the intentions of a settlor and/or a beneficiary."[12] *Id.* at 852. Judge

---

[11] Maryland state and federal courts appear divided on whether the Trust Statute creates an express or implied trust, but many have determined that the statute fails to create an express or technical trust under applicable law. *Compare Selby v. Williams Constr. Servs.*, 948 A.2d 132, 136 (Md. Ct. Spec. App. 2008) ("The statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties. As a result, it is a trust implied in law.") and *In re Holmes*, 117 B.R. 848, 852 (Bankr. D. Md. 1990) ("The Maryland Construction Trust Statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties and therefore it is a trust implied in law.") *with In re Marino*, 115 B.R. 863, 869 (Bankr. D. Md. 1990) ("Under the subtitle headed 'Trust Relationships in the Construction Industry', an express trust is also created. Md. Real Prop. Code Ann. §§ 9-201—9-204 (1988 Repl.Vol.)."). *See also In re Halversen*, 330 B.R. 291, 298 (Bankr. M.D. Fla. 2005) ("The Court finds that the Maryland statute does not create an express or technical trust as required by § 523(a)(4) of the Bankruptcy Code, and that a violation of the statute, without more, does not constitute grounds for determining that a particular debt is nondischargeable.").

[12] Judge Schneider cites relevant authority to identify the three primary kinds of trusts:

> Where based upon the expressed intent of the settlor they are called *express trusts;* when they come into existence because of presumed or inferred intent they are given the name of *resulting trusts;* and when they are created by court action in order to work out justice, without regard to the intent of the parties, they are denominated *constructive trusts.* The two latter classes of trusts, according to the orthodox view, were grouped together under the heading of implied trusts and this terminology is still used. But the logic of this classification has been subject to criticism. There has been disagreement as to the meaning of "implied" in this connection. The Restatement of Trusts abandoned the phrase "implied trust" and this seems desirable.

Schneider opines that a state legislature's intent cannot be substituted for that of the parties under the express trust doctrine. He explains quite pointedly why this distinction is important in the context of nondischargeability, noting

> The rationale for limiting nondischargeability to fraud and defalcations committed by a trustee in fact is that such *misconduct by one who voluntarily undertook specific fiduciary obligations* is more reprehensible and more worthy of disapprobation than the misconduct of one whose fiduciary duties are involuntarily imposed by operation of law. At the same time, it is obvious that a beneficiary of a trust in fact who reposes trust and confidence in a trustee and who is injured by his defalcation is more worthy of protection than an injured business associate who presumably dealt with the debtor at arm's length and on an equal basis.

*Id*. at 854–55.

The Court agrees with Judge Schneider's conclusion in *Holmes*.[13] Although the Court is not willing to rule out completely the potential for a statutory trust scheme to satisfy section 523(a)(4) of the Code,[14] the language and structure of the Trust Statute do not rise to the level of an express or technical trust. The Trust Statute imposes a trust on payments received by a contractor or subcontractor relating to a construction project, regardless of the intentions of the parties. No trust or fiduciary relationship exists between the parties at the outset of the contract or with respect to the parties' general working relationship. The trust-like obligation springs into existence only with respect to, and upon payment of, certain funds. MD. CODE ANN., REAL PROP. § 9-201(b). The statute likewise does not impose a duty to segregate or to separately account for

---

*Id*. at 853 (quoting 1 Bogert *The Law of Trusts and Trustees*, § 1 (2d ed. 1977)).

[13] The Plaintiff suggested that changes to the Trust Statute after the *Holmes* decision warrant a different result. The Court does not believe that to be the case. The amendments referenced by the Plaintiff do nothing to alter the structure of, or to address the missing elements of an express trust that exist in, the Trust Statute. In addition, courts have continued to follow *Holmes* subsequent to the noted amendments. *See In re Halversen*, 330 B.R. 291, 300 (Bankr. M.D. Fla. 2005) ("The Court finds that the amendments that took effect in 1995 have no material impact on the Maryland Court's previous analysis of the Statute under § 523(a)(4)."); *In re McGee*, 258 B.R. 139, 145 (Bankr. D. Md. 2001).

[14] For example, a statute's language together with a voluntary assumption of those statutory duties by an individual, particularly when evidenced by a written instrument, might establish the express or technical trust required by section 523(a)(4). *See, e.g., Durant*, 586 B.R. at 588 n. 9 (explaining that, based on the facts before the Court, "[t]he Minors Act and section 9(h) of the Will create an express trust under Maryland law").

the funds. MD. CODE ANN., REAL PROP. § 9-201(c) ("Nothing contained in this subtitle shall be construed as requiring money held in trust by a contractor or subcontractor under subsection (b) of this section to be placed in a separate account.").

Rather, the Trust Statute unilaterally alters the terms of a basic debtor-creditor relationship in the following way. A contractor or subcontractor comes into possession of money that might be owed, at least in part, to another subcontractor. The Trust Statute imposes an involuntary trust on that money, and the contractor's or subcontractor's failure to remit those funds then gives rise to the director's or officer's potential liability under the statute. The Trust Statute may create a trust, and identify an officer or director as a trustee, before the funds are misused, but providing a remedy for that particular (and anticipated) harm is the sole purpose of the trust.[15] *See, e.g., In re Nail*, 680 F.3d 1036, 1041 (8th Cir. 2012) (distinguishing a nominal trust created by statute prior to the

---

[15] *See, e.g., Manelos*, 337 B.R. at 415 ("In order for a state statute to give rise to a fiduciary duty for non-dischargeability purposes, the statute must 'impose a trust prior to and without reference to the wrong which created the debt.'") (citations omitted). The Court appreciates the argument that statutes like the Trust Statute impose the trust prior to the wrong. *See, e.g., In re Munton*, 352 B.R. 707, 714–15 (B.A.P. 9th Cir. 2006) (describing different approaches to the dischargeability of trust obligations created by state statute and holding that state statute at issue fell within section 523(a)(4)). In many ways, however, that argument ignores the substance and function of the statute. A contractor or subcontractor is not, typically, in a fiduciary relationship with other contract parties. Notably, the Trust Statute does not make either the contractor or subcontractor (or its officers or directors) fiduciaries for all purposes. Rather, the statute is targeted to the particular conduct giving rise to the alleged wrong. It is a pre-emptive strike that eliminates the need for the creditor to make the argument after the fact in state court. *See, e.g., Nail*, 680 F.3d at 1041 ("And while the statutory 'trust' was created when the settlement proceeds were paid (assuming without deciding those proceeds were Miscellaneous Proceeds), as in *Marchiando* the trust had a 'purely nominal existence' until Ms. Nail failed to remit those proceeds to Arvest. In other words, Ms. Nail was not a trustee 'before the wrong and without reference thereto.'") (citations omitted); *Matter of Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) (examining an Illinois statute and opining that "[t]he intermediate case, but closer we think to the constructive or resulting trust pole, is that of a trust that has a purely nominal existence until the wrong is committed. Technically, Marchiando became a trustee as soon as she received her license to sell lottery tickets. Realistically, the trust did not begin until she failed to remit ticket receipts."). Although such a statute might further underlying state law policies, this Court is concerned first and foremost with the policies underlying the Bankruptcy Code. *See, e.g., Butner v. United States*, 440 U.S. 48, 55 (1979) ("*Unless some federal interest requires a different result*, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (emphasis added).

14

alleged wrong from the establishment of a true express or technical trust). In this regard, the Trust Statute is more akin to a constructive trust or trust ex maleficio than an express or technical trust.[16]

The Court recognizes that constructive trusts historically have been imposed by courts as equitable remedies.[17] As Judge Schneider notes in *Heilman*, however, "[s]tatutory trusts are not express or technical trusts. Trusts created by statute are quasi-trusts, constructive trusts and/or resulting trusts, because they are created in law, regardless of the intentions of the parties." 241 B.R. at 162. The Court also notes that some states have expressly codified the remedy of constructive trusts. *See, e.g., United States v. Buk*, 314 F. App'x 565, 569 (4th Cir. 2009) (analyzing constructive trusts under California law, codified at California Civil Code §§ 2223–24) (quoting *United States v. Pegg*, 782 F.2d 1498, 1500 (9th Cir. 1986), which analyzes California Civil Code §§ 2223–24). As Judge Flatley explained in *In re Pak*, "there is no cause of action under § 523(a)(4) based on the existence of a constructive or resulting trust because those types of trusts serve as remedies for another's breach of duty." No. 16-AP-42, 2017 WL 1207533, at *4 (Bankr. N.D.W. Va. Mar. 31, 2017). *See also In re Blair*, 569 B.R. 224, 229 (Bankr. M.D. Pa. 2017) ("It is generally held a '[c]onstructive or implied trust or trust ex maleficio is not sufficient to create [a] fiduciary relationship within [the] meaning of 11 U.S.C.A. § 523(a)(4).'").

Finally, the Court observes that this result is consistent with the "fresh start" policy underlying the Code. Although state law plays an important role in bankruptcy cases, federal, and not state, law must govern the core components of bankruptcy law. The Supreme Court has

---

[16] Courts define trusts ex maleficio as "trusts imposed because of wrongdoing on the part of a person to be charged as a trustee." *In re Wightman*, 36 B.R. 246, 251 (Bankr. D.N.D. 1984).

[17] For example, under Maryland law, "'[a] constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property.'" *In re Greenbelt Rd. Second Ltd. P'ship*, 39 F.3d 1176 (4th Cir. 1994) (quoting *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md.1980)).

consistently recognized the bankruptcy discharge as solely within the realm of federal law,[18] and both it and lower courts have preempted state law trying to govern or impede the discharge.[19] *See, e.g.*, *Perez v. Campbell*, 402 U.S. 637, 648 (1971) (preempting a state motor vehicle law that authorized suspension of debtor's driver's license if certain judgments are not paid as violating bankruptcy discharge).[20] The Court is not suggesting that the Trust Statute is preempted by the discharge provisions and fresh start policies of the Code, particularly because the Court concludes that the language of the Trust Statute does not create the kind of express or technical trust required for section 523(a)(4). The Court notes only that basic preemption principles also support this conclusion.

---

[18] *See, e.g., Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929) ("Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations.").

[19] Federal preemption in the bankruptcy context stems from the Supremacy Clause and the Bankruptcy Clause of the U.S. Constitution. U.S. CONST. art. I, § 8, cl. 4 (the Bankruptcy Clause); art. VI, cl. 2 (the Supremacy Clause). In general, preemption is based on Congressional intent and can be either express or implied. "Under 'express preemption,' the intent of Congress to preempt state law is explicit." *In re Schafer*, 689 F.3d 601, 613–14 (6th Cir. 2012) (citations omitted). With respect to implied preemption, the Fourth Circuit has recognized both field preemption and conflict preemption. *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301 (4th Cir. 1992). As the Fourth Circuit explained in *Worm*, "even absent an express or implied congressional intent to preempt state authority in a field, state law is nevertheless preempted by operation of law to the extent that it actually conflicts with federal law." *Id*. at 1304. *See also Arizona v. United States*, 567 U.S. 387, 399 (2012) (explaining, among other things, that conflict preemption includes "those instances where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'") (citations omitted); *Schafer*, 689 F.3d at 614 (explaining that "under 'conflict preemption,' the laws in question conflict such that it is impossible for a party to comply with both laws simultaneously, or where the enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law"). In many cases involving the bankruptcy discharge, the Supreme Court has invoked the doctrine of field preemption. A case that involves state law potentially frustrating a policy or objective of the Bankruptcy Code, such as the fresh start policy, falls more squarely under a conflict preemption analysis.

[20] *See also In re Fracasso*, 222 B.R. 400, 401 (B.A.P. 1st Cir. 1998), *aff'd,* 187 F.3d 621 (1st Cir. 1999) ("'[T]he conclusion that the Massachusetts law "conflicts" with the Bankruptcy Code's congressionally-intended operation, and must give way to the Code's preemptive powers, is unavoidable.' . . . The result is prescribed by the federal fresh start policies embodied in § 522(c).") (citations omitted); *In re Lawson*, 342 B.R. 98, 100 (Bankr. E.D. Okla. 2006) ("To the extent state law interferes with the 'fresh start' policy underlying the lien avoidance provisions of § 522(f), federal law preempts it."); *In re Carlson*, 202 B.R. 946, 952 (Bankr. N.D. Ill. 1996) ("Thus, an Illinois state law or state Supreme Court rule providing that a former debtor-attorney who received a bankruptcy discharge would not be reinstated in the Illinois Bar without payment of a dischargeable debt and would be invalid under the Supremacy Clause and *Perez* authority. However, that is not the present situation.").

The Court thus holds that, in the context of trusts, only express or technical trusts create the kind of fiduciary relationship covered by section 523(a)(4) and the Trust Statute does not satisfy that standard.

### 3. Voluntary Trusts and Section 523(a)(4)

The Plaintiff argues that, even if the Trust Statute does not create an express or technical trust, the parties themselves intended to create a fiduciary relationship. The Plaintiff points to statements made by the Defendant in response to the Plaintiff's inquiries regarding the status of its outstanding payments. For example, the Plaintiff emphasizes that, after its request for past due payments, the Defendant promised that the Plaintiff would be her first payment after she received the funds from the project owner. Pl. Ex. 19, ECF 21-3. The Defendant counters that she never intended to earmark or hold the funds in trust for the Plaintiff but was indicating an intention to pay a debt.

In analyzing the nature of any given fiduciary relationship, courts do (as noted above) consider state law. "'Under Maryland law, the creation of an express trust must include the following: (1) property, known as a *res,* that is owned by the settlor; (2) a settlor who is competent to create a trust; (3) a person capable of holding the property as trustee; and (4) a beneficiary, the person for whose benefit the *res* is held.'" *In re Mueller*, 256 B.R. 445, 460 (Bankr. D. Md. 2000) (citations omitted). *See also In re Shank*, 240 B.R. 216, 221–22 (Bankr. D. Md. 1999); *In re Davis*, 262 B.R. 673, 683 n.3 (Bankr. E.D. Va. 2001). Courts evaluating these elements emphasize that "'an express trust requires an intention on the part of the settlor to create a trust.'" *Mueller*, 256 B.R. at 460. Nevertheless, the agreement need not be in writing or take any particular form.[21]

---

[21] Although an express or technical trust gives rise to the requisite fiduciary relationship, other trust-like relationships might suffice in certain instances. *See, e.g., Durant*, 586 B.R. at 588 n. 9; *In re Burton*, 416 B.R. 539, 543 (Bankr. N.D.W. Va. 2009) ("Even in the absence of an express or technical trust, however, 'the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to

The Plaintiff's assertion of a voluntary, express trust contemplates an agreement among the parties to create a trust relationship after the fact, namely after the execution of the parties' contract, performance of the Plaintiff's obligations, and a payment default. Regardless of whether the Defendant promised payment, the Plaintiff was already owed those amounts under the parties' contract. As explained above, the Supreme Court and lower courts have determined that the fiduciary relationship for purposes of section 523(a)(4) must exist prior to, and without reference of, the alleged wrong. *See, e.g., Davis*, 293 U.S. at 333 (fiduciary relationship must exist prior to "act of wrongdoing" and debt must be created "by a person who was already a fiduciary"); *Ogbebor*, 2013 WL 5376531, at *10.

The Court observes that the Fourth Circuit has distinguished the Supreme Court's holding in *Davis* in situations where the parties' agreement clearly delineates a fiduciary or trust relationship. *See In re Strack*, 524 F.3d 493, 499–500 (4th Cir. 2008). That approach appears, however, to relate more to the specific language of the parties' agreement and not whether the fiduciary relationship predated the subject debt (in *Strack*, the agreements were in fact executed prior to the alleged payment defaults). *Id*. at 495–497, 499–500. Given that the existence of a voluntary agreement might nullify a trust ex maleficio argument and is a prerequisite to any further analysis under section 523(a)(4), the Court turns to the alleged voluntary trust and fiduciary relationship between the parties.

---

create a technical trust relationship for purposes of section 523(a)(4).'") (citations omitted). Under Maryland law, "'[o]ne is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity," when the business [that] he transacts, or the money or property [that] he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation[ship] implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'" *Wagner v. State*, 128 A.3d 1, 23 (Md. 2015) (citations omitted). Nevertheless, as discussed in Part III.A.1 above, not every fiduciary relationship under state law gives rise to a nondischargeability claim under section 523(a)(4). *Ogbebor*, 2013 WL 5376531, at *6. The analysis under section 523(a)(4) is often more demanding.

The Plaintiff's factual allegations concerning the creation of a voluntary trust agreement or other express fiduciary relationship are minimal. They consist primarily of statements by the Defendant that she was aware of the amounts owing to the Plaintiff and would try to make payments on that debt once funds were available. The allegations in the Amended Complaint and the text exchanges attached at Exhibit 19 represent statements by a debtor who was out of funds but being pressured by a creditor for payment. They do not suggest any agreement to segregate or earmark funds or otherwise hold funds in trust for the benefit of the creditor. Indeed, the Court cannot find any words, conduct, or circumstances that indicate an intent by the Defendant to create an express trust or fiduciary relationship. Accepting all the Plaintiff's factual allegations as true and drawing all reasonable inferences in its favor, the Amended Complaint does not state a plausible claim under section 523(a)(4) of the Code. *See, e.g.*, *In re Stephenson*, No. 12-00357-8-JRL, 2013 WL 593900, at *5 (Bankr. E.D.N.C. Feb. 15, 2013) (in context of allegations that plaintiff entrusted property to the defendants, the court held that because "[t]his entrustment, alone, is insufficient . . . to establish that the defendants were acting in a fiduciary capacity, the complaint fails to state plausible theory for relief.").

### B.  Section 523(a)(6)

Section 523(a)(6) of the Code excludes from an individual debtor's discharge "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Courts interpret the terms "willful" and "malicious" as modifying the term "injury" in section 523(a)(6), thus, requiring an intentional injury and not simply an intentional act. *See, e.g., Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729–30 (4th Cir. 2006); *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 128–29 (Bankr. E.D. Va. 2010). Courts do not, however, equate

"malicious" with malice or ill will. *See, e.g., Craig v. Corbin*, No. GJH-15-2656, 2016 WL 4082620, at *9 (D. Md. July 7, 2016). Rather, courts generally have determined that a "deliberate or intentional" injury that is "wrongful and without cause or excuse" satisfies the willful and malicious standard set forth in section 523(a)(6). *See, e.g., First Nat'l Bank of Maryland v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995); *Wooten*, 423 B.R. at 128–129; *BB&T Co. of Virginia v. Powers (In re Powers)*, 227 B.R. 73, 76 (Bankr. E.D. Va. 1998).

The Plaintiff asserts that the Defendant knowingly used funds for purposes other than paying the Plaintiff's claim. It points to the Defendant's promise to make payments, her statutory liability, and her use of the funds for other purposes. The Plaintiff then concludes that this course of conduct shows that the Defendant intended to cause economic injury to the Plaintiff.

Courts entertaining claims of economic injury under section 523(a)(6) typically require something more than the nonpayment of a debt. *See, e.g.*, *Stanley*, 66 F.3d at 668 ("Although a person need not know that someone else has superior ownership rights in the property to be technically liable for the tort of conversion, *see id.* & n. 7, *St. Paul's* test for malice requires such knowledge on the debtor's part before discharge will be denied—in other words, the debtor must have engaged in a 'wrongful' conversion."); *Wooten*, 423 B.R. at 130 (noting that "'simple breach of contract ..., even if intentional, would not give rise to a § 523(a)(6) violation.'") (citations omitted). This threshold inquiry is necessary because otherwise every commercial obligation outstanding at the time a debtor filed for bankruptcy would be potentially nondischargeable under section 523(a)(6). Such a sweeping approach contradicts the policy of construing exceptions to discharge narrowly. It would, in turn, leave relatively few claims subject to the discharge.

The Defendant argues that the Plaintiff's allegations under section 523(a)(6) constitute nothing more than a breach of contract claim for nonpayment. If that was the case, the Court would

agree with the Defendant and dismiss Count II based on the statutory language and the above-noted policy considerations. The Plaintiff's Amended Complaint, however, sets forth facts suggesting something more. The Amended Complaint grounds Count II in the Plaintiff's interest in certain funds under the Trust Statute and the Defendant's knowing and deliberate act to cause injury to the Plaintiff by withholding those funds. Several courts have held that such facts, if established at trial, are adequate to support a claim of nondischargeability under section 523(a)(6). *See, e.g., In re Crites*, No. 15-AP-30, 2016 WL 6208314, at \*9 (Bankr. N.D.W. Va. Oct. 21, 2016) ("This sort of intentional conduct includes those actions where the debtor knows the consequences flowing from the alleged act are certain, or are substantially certain to occur."); *In re Estrin*, No. AP 15-80039-DD, 2016 WL 691506, at \*15 (Bankr. D.S.C. Feb. 19, 2016); *In re Giordano*, 472 B.R. 313, 334 (Bankr. E.D. Va. 2012); *In re Helms*, No. 03-51201, 2004 WL 1960150, at \*4 (Bankr. M.D.N.C. Sept. 2, 2004).

The Court recognizes its previous conclusion that the Trust Statute does not create the kind of fiduciary obligations necessary to except a debt from discharge under section 523(a)(4). That conclusion does not, however, preclude a determination that the Plaintiff had cognizable rights in the money paid by the project owner to Vito Construction under the Trust Statute and that the Defendant knowingly disregarded those rights. As the Fourth Circuit has explained, "a debtor's injurious act done 'deliberately and intentionally in knowing disregard of the rights of another,' *i.e.,* a creditor, is sufficiently willful and malicious, and prevents discharge of the debt." *Stanley*, 66 F.3d at 667 (citations omitted). *See also Crites*, 2016 WL 6208314, at \*9. Moreover, at least one other judge in this district has recognized the potential for a creditor to have rights under the Trust Statute that are protected by section 523(a)(6). *See In re Abell*, No. 17-00314, 2018 WL 3624462, at \*8 (Bankr. D. Md. July 26, 2018).

Based on the Court's review of the Amended Complaint and the Exhibits attached thereto, the Court finds that the Plaintiff has alleged facts that demonstrate a plausible claim to except at least part of the subject debt from discharge under section 523(a)(6) of the Code. The Court emphasizes that it is not by this finding making any determinations regarding the adequacy of the alleged facts to meet the Plaintiff's ultimate burden under section 523(a)(6). Whether the Defendant intended to cause injury to the Plaintiff, as required by section 523(a)(6), is a subjective analysis that will turn on the evidence presented at trial.[22] The Court thus will deny the Motion to Dismiss as to Count II of the Amended Complaint.

## IV.   <u>Conclusion</u>

For the reasons set forth above, the Court concludes that the Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted under section 523(a)(4) of the Code. The Court finds, however, that the Amended Complaint alleges facts to support a plausible claim for nondischargeability under section 523(a)(6) of the Code. As such, the Defendant is only entitled to the relief requested by the Motion to Dismiss as to Count I of the Amended Complaint. The Court will enter a separate order consistent with and incorporating this Memorandum Opinion, which grants in part and denies in part the Motion to Dismiss.

**Copies to:**
Debtor/Defendant
Debtor's Counsel
Plaintiff's Counsel
Chapter 7 Trustee

**END OF MEMORANDUM OPINION**

---

[22] The Fourth Circuit has explained the analysis required by section 523(a)(6) as follows:

Because the *St. Paul* test requires a deliberate act in "knowing" disregard of a creditor's rights, it is the debtor's subjective state of mind that is relevant; it does not matter that a "reasonable debtor" should have known that his act would adversely affect another's rights. However, a particular debtor's knowledge may be proved by circumstantial evidence: "Implied malice ... may be shown by the acts and conduct of the debtor in the context of [the] surrounding circumstances."

*Stanley*, 66 F.3d at 668 (citations omitted).